Ms. Brody, good morning. Please proceed. Thank you, Your Honor. May it please the court, my name is Amy Brody on behalf of Appellant Apotex Inc. Based on the binding precedent of this court and the Supreme Court, including the decisions of Madimune, Novartis, and Carrico... Counsel, can I just ask you about this question that we sent to the parties, and you all, and I understand the letter I got today to be joint from both of you stipulating that Teva has not launched. Your Honor, that's correct, based on both the parties' investigations. So they've launched, as I understand it, Caplets and Capsules, but not the oral version of this particular drug, and is that your basis for saying that they haven't launched? Your Honor, Teva launched the tablet product, has not launched the oral solution product, which is the product that issued these... But they launched two different things. They launched Caplets and... Tablets. Tablets, right, or Capsules and Tablets, right? But they haven't launched the oral form. That's correct, and that is the only product at issue in this appeal, Your Honor. Okay, and so that's your basis for saying they have not launched? Correct, and we did specify the oral solution product for that particular reason in our letter. Well, here's one of my problems with D.J. jurisdiction in this case, and I'm hoping you can help me understand and appreciate it, which is that... Am I wrong? Apotex is not... They stipulated to infringement, validity, and enforceability of the 663 patent. Isn't that right? That is correct, Your Honor. So unlike Caraco, where both patents could have been invalidated, you can't possibly invalidate in this suit all the patents related to this particular oral pharmaceutical, because you've stipulated to one of them. So this isn't a case like Caraco, which could force the 180-day period to move up substantially by successfully getting a court order and validating them all. Your Honor, it is correct that Caraco is different in the fact that there is no decision of invalidity or infringement here. Apotex did stipulate to infringement. However, the cases cannot be so easily distinguished and dissected, because that would completely undermine the framework established by Menomune. This is a big harm, though, isn't it? I mean, in Caraco, a very large portion of the harm was if you successfully invalidate both of these patents, you can move up the 180-day period many, many years, and that simply can't occur here because of the 663 patent. It seems to me you made a critical, possibly litigation error by not challenging 663, because then you would have been completely aligned with the facts of Caraco. But you have lost out on being able to allege that very significant harm that was present in Caraco. Your Honor, two points. The first, the facts of each case do not necessarily have to be exact. The standard is— No, but we have to measure the injury. We have to look for injury. You're talking about the policies of Menomune, but we have to deal with the policies of the Hatch-Waxman Act, too. And if there's—we have to make sure the first filer, for instance, gets their 180 days of exclusivity. In this case, that's Teva. They're not here. But we have to worry about that, because that's part of the Hatch-Waxman Act. So how do you deal with that? Your Honor, Congress explicitly gave later filers, such as Apotex, the right to trigger the 180-day exclusivity. And therefore, it's not necessarily correct that you have to give Teva that 180 days. The 180 days is still there. Apotex— No, you just want to chew it all up while they can't actually mark it. But that's what Hatch-Waxman was intended to do. Under the court decision— That's not what the statute does. It might be what you think Hatch-Waxman was intended to do, but the statute doesn't do that. But, Your Honor, under 355JB4, which is applicable here, Apotex has the right to trigger the 100-day exclusivity by a court decision, which is what it is seeking here. The 3M decision further discusses and demonstrates— Teva can't launch until 663 expires, correct? That's correct. You're not challenging 663. You, in this case, are not going to be capable of giving them the ability to launch earlier, because you cannot secure, by virtue of your litigation choices, a court decision invalidating or non-infringement with regard to all three patents related to this product, correct? Since you did not choose to pursue the 663, you cannot move up Teva's potential launch date. Correct, Your Honor. Okay, so you can't— Teva can't launch now until the 663 expires. By virtue of this decision, you're not capable of moving that date up, because you chose not to pursue a cause of action on one of the patents. And so you would like to pursue it on the other two, the only potential result of which, as I can see it, would be to force Teva's 180-day period to start clicking when they're not capable of launching, because of the 663 patent. Your Honor, an important point. The 663 patent, the pediatric exclusivity, expired on June 29th last week. Teva could have launched subsequent thereto. Teva does not even have FDA approval to launch this product. Therefore, if Avidex could have triggered the 180-day exclusivity months ago— Okay, but doesn't the Supreme Court— I mean, I have a whole list of cases here. My law clerk collected for me. Steffel v. Thompsons. Then there's a whole bunch of SuperSAC, Arkays, GAF, Benetech. Don't they all say that we're supposed to evaluate the actual injury or the injury that exists on the day the complaint is filed? And on the day this complaint is filed, you have had no reason to allege a belief that Teva was not going to launch as soon as it could. So I'm having trouble seeing when all of the precedent related to DJ jurisdiction generally says you look at the facts as they exist on the day the complaint is filed. Not the day the appeal happens to be heard, but the day the complaint is filed. And on the day the complaint is filed, Teva was not even capable of launching at that point. So why do you want us to focus on something the Supreme Court says we can't for purposes of assessing the injury that existed on the day you filed your complaint? Your Honor, history dictates that Teva has failed to launch when it has had the opportunity to do so. In fact, in the case of Sertraline, in which Apotex brought a DJ action, and which was the dismissal of which was affirmed by this court in 2005, Teva did not launch on the first day it could have. And that undermines the very purpose of Hatz Waxman, which is to get lower-priced generic drugs to the public as soon as possible. And that loophole has now been corrected, right? The new amendments, or the not-so-new 2003 amendments to the statute have corrected so that if now Teva should drag its feet on any future cases that come, if Teva should drag its feet in launching, remind me, is it 45 days, 70 days? There's some number, if they don't launch, their 180 days just goes away. Your Honor, that's under the forfeiture provisions under the MMA, which do not apply here. Because this is a pre-MMA case, the 180-day court decision trigger of 355 days before, excuse me, applies. And therefore, the forfeiture provisions do not apply, which I believe is what you were addressing. Right, but what I was suggesting was that Congress has now plugged that problem. So this is, it may be a problem in your case, but it's not a problem going forward because this exact problem that you're referring to has now been corrected statutorily. Your Honor, it has not been corrected because currently, a generic could have launched as of last week to get these lower-priced drug products to the consuming public. And as of now, Teva does not even have approval. Apotex has no reason to believe that it could not have obtained approval as of June 29th. The problem is actual injury on the day you filed your complaint is what I have to look at. And the only injury that you're really alleging is that a belief that Teva's not going to launch and that will delay the start of their 180 days and thereby delay. You know what? Even if I were inclined to agree with you, if you filed your complaint today, where Teva has not launched, that you are actually being harmed, it's hard for me to say, speculatively, on the day you filed your complaint, that I believed there was so much harm because of the possibility that Teva might not launch. That's the problem I'm struggling with. So help me to appreciate how I get through that problem. Your Honor. What if your complaint was filed 10 years before or five years before Teva's potential launch date? It would just seem so incredibly speculative for me to say, yes, you're right, you have sufficient actual injury for a declaratory judgment suit to go forward because 10 years from now on the day Teva might launch, they might not. Do you see my problem I'm struggling with? I mean, this is the difficulty I have. Your Honor, under the Article 3 standard, which is the only standard Apotex must satisfy, you must look at all the circumstances in the particular case. Here, Apotex was injured. It's been restrained from exploiting its non-infringing goods. You're again focusing on what the Supreme Court and our jurisdiction has clearly said we can't, which is post-complaint activities. We can't look at what the state of situation is as of today to decide whether you were actually injured. When did you file the complaint? You probably know better than I do. The complaint was filed, Your Honor, in March 2006. Okay. So I can't look at the fact that Teva didn't launch three days ago or five days ago when it possibly could have as the basis for creating now an injury for you two years ago. You have to look at the state of affairs on the day you filed the complaint. So maybe if you went and filed tomorrow, you'd be fine. But today, I'm having trouble. But Your Honor, that is not the case under the given law. And under the Article 3... Where's your injury? What's your injury? The injury, Your Honor, is the fact that Apotex had the right to trigger the 180-day exclusivity period. But we've been through that. In March 2006, you had every right to expect Teva would trigger that. So where are we today? What's your injury now? The injury, in fact, as established by this Court, and as recently as Nuvartis and Caraco, is that a later filer, such as Apotex, has no obligation to avoid triggering litigation based upon the fact that another generic filer would have that 180-day advantage. As you've seen, Apotex filed this litigation... Apotex has been involved in this litigation now for a little over two years. But it took that much time to get to this Court. And therefore, Apotex could have obtained that Court decision trigger six months, nine months ago, but for the fact that Jansen engaged in a tactical scheme to prevent Apotex from doing what Hatch-Waxman intended. That is to be able to launch a drug product at the earliest time possible. So yes, Apotex could have filed... But didn't Hatch-Waxman also intend to encourage first filers by giving them 180 days under Paragraph 4 certifications? And don't we have to implement that policy objective behind the Hatch-Waxman Act as well by ensuring that Teva gets its 180 days? I mean, you want to take it away when they can't even launch. You did. I mean, that was part of your argument. You wanted to force them, their 180-day period, to start before they were even capable of launching, which meant it would have just eaten up their period. And Your Honor, that is just what Congress intended. The purpose, the overall... I'm not saying that you should overlook the fact that Teva was the first filer and had a right to 180-day exclusivity. However, Congress expressly provided Apotex the right to go forward and obtain a Court decision that would trigger that 180-day... You didn't challenge all three. You didn't challenge the 663. That should not matter, Your Honor, because the underlying injury is the same. There is a patent that is blocking Apotex's right to gain market... But you couldn't trigger the 663, right? That is correct, Your Honor, because Apotex did stipulate to infringement of that patent. But the practical effect of the situation in Caraco and the situation here, there should now be no difference. Because again, the underlying overarching issue is that there is a patent blocking Apotex's approval and its ability to launch its product. Currently, the consuming public... Isn't the issue here that you're second in line and now you have to wait? I mean, that's just what Hatch-Waxman says. But that's not what Hatch-Waxman intended. Even looking at the 3M case, again, a later filer such as Apotex does not have to wait to trigger that 180-day until the first filer has in fact launched its product. Do you want to save the remaining minute and a half for rebuttal? Yes, Your Honor. Thank you, Mr. Howard. May it please the court. The district court was correct in finding that... By the way, do you think Congress really did intend all of this? I think they did, Your Honor. I think Congress intended to allow for the early launch of generics. They thought this all through, that the second filer might have filed on one patent, but not the other two, and that you, by not giving a... By giving consent that you will not sue, could block them from using their other two patents. And Congress thought all that through, huh? No, I don't think they thought about that specific issue. What Congress did think about is how to go and encourage early filers. And they tried to encourage early filers in two different ways. The first one is allowing the first person to file 180 days of generic exclusivity once they're able to launch. The second way is, if there's an actual case or controversy, and there's a subsequent filer who, because of that case or controversy, finds the patent invalid or not infringe, then that is a reward for that challenge on a real case or controversy. They can go and cause a triggering event in which will cause the first filer to lose the exclusivity. But that's because there's been a benefit to the public. There's a finding of non-infringement. There's a finding of invalidity where there's been a real case or controversy. And Congress did consider whether or not there was a need for a case or controversy. And when the law first came up, there was going to be originally just any end of filer was going to be able to bring a declaratory judgment action. The Department of Justice gave an opinion saying this would be unconstitutional. It would extend beyond Article III jurisdiction. And the law was amended to require a case or controversy. And in this case, there is no case or controversy. There are no legal adverse interests involved in this case. We've given Apotex a covenant not to sue. We cannot sue them no matter what happens in the future on their product. If the case did go forward, whatever the outcome, the legal relationship between the parties wouldn't change. They could launch their product when they get FDA approval and not owe Janssen any money. The other issue I'd like to address- Counsel, do you agree that had they actually not made the stipulation they did with regard to the 663, we'd be in exactly the same situation as Caraco and that this court would be bound by that precedent? Yes, if they had not stipulated, it would be in Caraco. But they did- Right, so the key difference here is the 663 patent and their choice to stipulate infringement validity and enforceability. Because as a result of that stipulation, it would just have a can't launch. That's correct. There's no reason to think that Tevo, though, won't be able to launch once they get FDA approval. Last Monday, the FDA gave approval to the tablet form of risperidone. Tevo launched on the same exact day. We understand that Tevo's been telling its customers they expect to get approval early this week. But none of that is in the record. None of that is before us. I assume that you would agree with my recitation of Supreme Court and Federal Circuit precedent on what we're supposed to consider to determine if there's an actual controversy namely only the facts as they existed on the day the complaint was filed. No, Your Honor, with all due respect, I disagree. That is one point they have to establish standing at all times, both when the complaint was filed and at any point during the case for the appeal. At the moment that Tevo launches, this case will become moot. And this court should go and dismiss it at that point. And that's a- Well, they're alleging other injuries, whether we agree with them or not. They're alleging other injuries. I understand you think it will become moot. But for purposes of assessing whether D.J. jurisdiction existed at the time the complaint is filed, I assume that you would agree with my recitation, which is that we're supposed to look at the facts as they existed on that day. Meaning the notion that Tevo might not file is very speculative. And we have to look at that as of the day of the complaint being filed, not today with the hindsight of knowing they didn't in fact launch. Correct, Your Honor. And looking at the standing on that day- You said you didn't agree with me. I got a little concerned. I thought, wow, did I get all of this precedent wrong somehow? My point was, yes, they have to have had standing on that original day- And they still have to have it today. Correct. You didn't disagree with me. You just wanted to add something. Correct, Your Honor. What happens though when Tevo- Let's assume that Tevo launched last Friday. FDA approval. You have the advantage now of hiding behind the FDA. And that's an interesting interplay there. But you're hiding behind the FDA. Assume they had launched. What would be the situation now? We would have filed this morning or on Friday a motion to dismiss the case. The only injury- Because it's smooth. Because it's smooth. What about if they would then assert and say, but there's some uncertainty and we want to clarify by court order the validity of these patents? There is no uncertainty right now with regard to their product. We've given them a covenant not to sue. We believe that covenant not to sue is completely effective. They've made a few points that they didn't think their covenant went far enough. We've addressed them in our brief to the extent our original covenant didn't cover their customers. Her statement in the brief says it does. And this case law, this court's law with regard to covenants not to sue has been quite specific. Where there's been covenants not to sue, such as in the Benetech case, the court finds there's no jurisdiction. The mere fact that they might have some other product that they want to come out with in the future and they have a question about that, that doesn't create a case or controversy today. Unless the panel has any further questions, I'd like to rest on my briefs. Thank you. Mr. Brody, you have one minute and a half. OK. Your Honor, just a couple of points. To address the point by Judge Rader as to assume a launch by Tata last week, we disagree that this case would be moot. Under the clear exception of the capable of repetition yet evading review, Apotex has been before this court on similar if not the same issues, not one, not two, but at least three times, Your Honor, in the last few years. And therefore, this issue the idea that a brand company, the patenee, can write a covenant and continue to block a generic company from gaining approval and launching has been repeated multiple times. And therefore, this case... In Caraco, right? In Caraco, there was a covenant not to sue and yet we found there was D.J. jurisdiction. Yes, Your Honor, that's correct. And just another point, Your Honor, about the Benetech case that was mentioned by Mr. Howard. We do not believe that applies in part because in that case, the D.J. plaintiff was not facing the inability to market under the unique framework of Hatch-Waxman, which, again, is critical here because this is not a typical patent case and therefore Apotex is being improperly prevented from marketing its non-infringing goods. Can I ask a tough question? Has Hatch-Waxman worked? Your Honor, we... And I want you to think just a minute. Has it worked? Of course, it's caused things to happen, but it's created a lot of litigation. Has it really worked in clarifying when generics can enter exactly the marketplace without the complexities of litigation that it seems to have created? Your Honor, we believe it has worked, but the problem is, which has been addressed by this Court before, Congress can never come up with every scenario that's going to happen. And what has happened is the brand companies, the patentees, have come up with different strategic tactical strategies to prevent generics from entering the market and that completely... Well, but that's to be expected. So that kind of comes back to the question, has Hatch-Waxman really worked? And I can tell you, we didn't think of everything that has emerged. Your Honor, we believe it has, and the Court has the power and the tools to continue to make it work and to make it work better. Thank you. Thank you, Your Honor. I take the appeal under advisement. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.